UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FRED KENT AND FARAH KENT

      Plaintiffs,
v.                                                            CASE NO.:

CITIBANK, N.A.,

      Defendant.
_____/

## COMPLAINT

1. Unwanted "Robocalls" are the #1 consumer complaint in America today.

2. The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[1]

3. Citibank, N.A., the Defendant, sent text messages to the Plaintiffs a mindboggling 1000 times although they never gave them permission to text and asked repeatedly for the text messages to stop.

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm*

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

*Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

5. Plaintiffs, Fred and Farah Kent, alleges Defendant, Citibank, N.A., texted them more than 1000 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), Invasion of Privacy ("IOP"), and Intentional Infliction of Emotional Distress ("IIED").

6. Robocalls and texts are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7. The TCPA was enacted to prevent companies like Citibank, N.A. from invading American citizens' privacy and prevent illegal robocalls and text messages.

8. Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls and texts are a greater nuisance and invasion of privacy

2

than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls and texts whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

10. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

11. Violations described in the Complaint occurred while Plaintiffs were in Cooper City, Florida.

## FACTUAL ALLEGATIONS

12. Plaintiffs are natural persons and citizens of the State of Florida, residing in Cooper City, Florida.

13. Plaintiffs are a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

14. Plaintiffs are the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

15. Defendant is a Corporation with its principal place of business in New York, NY, and conducts business in the State of Florida.

16. Plaintiffs are the regular user and carrier of the cellular telephone numbers at issue, (954) 687-5967 and (954) 329-8857.

17. Plaintiffs were the "texted party" during each text message subject to this lawsuit.

18. Defendant intentionally harassed and abused Plaintiffs on numerous occasions by texting them several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

3

19. Defendant did not have the "express consent" of the Defendant to call their cell phone.

20. "Express consent" is narrowly construed by the Courts.

21. It is the Defendant's burden to prove they had "express consent" per the TCPA to text the Plaintiffs on their cell phones using an "automatic telephone dialing system" (ATDS).

22. It is the Defendant's burden to prove they had "express consent" per the TCPA to text the Plaintiffs on their cell phones using an ATDS for each account they were texting on.

23. Defendant was put on notice that Plaintiffs did not want the Defendant contacting them.

24. Defendant did not have the express consent of the Plaintiffs to text them on the accounts they were texted on.

25. Defendant was told repeatedly that the account the texts were concerning was previously closed.

26. Plaintiffs expressly revoked any express consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiffs' aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

27. Defendant attempted to alert Plaintiffs of low account balance by this campaign of text messages.

28. Defendant made at least one (1) text message to (954) 687-5967 and (954) 329-8857.

29. Defendant made at least one (1) text to (954) 687-5967 and (954) 329-8857 using an ATDS.

30. Defendant made at least ten (10) texts to (954) 687-5967 and (954) 329-8857.

31. Defendant made at least ten (10) texts to (954) 687-5967 and (954) 329-8857 using an ATDS.

32. Defendant made at least fifty (50) texts to (954) 687-5967 and (954) 329-8857.

33. Defendant made at least fifty (50) texts to (954) 687-5967 and (954) 329-8857 using an ATDS.

34. Defendant made at least one hundred (100) texts to (954) 687-5967 and (954) 329-8857.

35. Defendant made at least one hundred (100) texts to (954) 687-5967 and (954) 329-8857 using an ATDS.

36. Defendant made at least three hundred (300) texts to (954) 687-5967 and (954) 329-8857.

37. Defendant made at least three hundred (300) texts to (954) 687-5967 and (954) 329-8857 using an ATDS.

38. Defendant made at least five hundred (500) texts to (954) 687-5967 and (954) 329-8857.

39. Defendant made at least five hundred (500) texts to (954) 687-5967 and (954) 329-8857 using an ATDS.

40. Defendant made at least seven hundred (700) texts to (954) 687-5967 and (954) 329-8857.

41. Defendant made at least seven hundred (700) texts to (954) 687-5967 and (954) 329-8857 using an ATDS.

42. Defendant made at least one thousand (1,000) texts to (954) 687-5967 and (954) 329-8857.

43. Defendant made at least one thousand (1,000) texts to (954) 687-5967 and (954) 329-8857 using an ATDS.

44. Each text the Defendant made to (954) 687-5967 and (954) 329-8857 in the last four years was made using an ATDS.

45. Each text the Defendant made to the Plaintiffs' cell phone was done so without the "express permission" of the Plaintiffs.

46. Defendant has texted other people's cell phones without their express consent.

47. Each text the Defendant made to the Plaintiffs was made using an ATDS, which has the capacity to store or produce telephone numbers to be called or texted, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

48. Plaintiffs repeatedly requested the Defendant to stop texting their cell phone, however, the Defendant continued to send texts.

49. Defendant has admitted to texting cell phones using an ATDS after that person asked for the texts to stop.

50. Plaintiffs' conversations with the Defendant putting them on notice that they did not want more texts were ignored.

51. Defendant has recorded at least one conversation with the Plaintiffs.

52. Defendant has recorded numerous conversations with the Plaintiffs.

53. Defendant has made approximately one thousand (1000) texts to Plaintiffs' aforementioned cellular telephone number within the past four (4) years, which will be established exactly once Defendant turns over their dialer records.

54. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robotexts.

55. Defendant has been sued in federal court where the allegations include: calling and texting an individual using an ATDS after the individual asked for the calls and texts to stop.

56. By effectuating these unlawful texts messages, Defendants have caused Plaintiffs the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

57. Defendant's aggravating and annoying text messages trespassed upon and interfered with Plaintiffs' rights and interests in their cellular telephone and cellular telephone line, by intruding upon Plaintiffs' seclusion.

58. Defendant's text messages harmed Plaintiffs by wasting their time.

59. Moreover, "wireless customers [like Plaintiffs] are charged for incoming calls and texts whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's photext messages harmed Plaintiffs by depleting the battery life on their cellular telephones, and by using minutes allocated to Plaintiffs by their cellular telephone service provider.

60. Defendant's corporate policy and procedures are structured as to continue to text individuals like the Plaintiffs, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

61. Defendant's corporate policy and procedures provided no means for the Plaintiffs to have thier aforementioned cellular numbers removed from the text list.

62. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.  The Defendant has been sued civilly in Federal Court 524 times since 2015 (Per PACER 2018).

63. In the last 3 years, the Defendant has had 3,807 complaints reported to the Better Business Bureau (BBB), of which 1,157 of those complaints are classified as being related to "Billing/Collection Issues." (Per bbb.org/citibankna/cusomter complaints).

64. Plaintiffs expressly revoked any consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiffs' aforementioned cellular telephones by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the texts. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

65. Defendant never had the Plaintiffs' expressed consent for placement of text messages to their aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

66. None of Defendant's telephone calls or texts placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

67. Defendant violated the TCPA with respect to the Plaintiffs.

68. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiffs.

## COUNT I
### (Violation of the TCPA)

69. Plaintiffs incorporates Paragraphs one (1) through sixty-eight (68).

70. Defendant willfully violated the TCPA with respect to the Plaintiffs each time they called the Plaintiffs after they revoked their consent to be texted by them using an ATDS or pre-recorded voice.

71. Defendant knowingly violated the TCPA with respect to the Plaintiffs, especially for each of the auto-dialed texts made to Plaintiffs' cellular telephone after Plaintiffs revoked their consent to be texted by them using an ATDS or pre-recorded voice.

72. Defendant, Citibank, N.A. repeatedly placed non-emergency text messages to the wireless telephone number of Plaintiffs using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

73. As a result of Defendant's illegal conduct, Plaintiffs suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

74. Plaintiffs are also entitled to, and does, seek injunctive relief prohibiting Defendant, Citibank, N.A., from violating the TCPA in the future.

**WHEREFORE**, Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
**(Violation of the FCCPA)**

1. Plaintiff incorporates Paragraphs one (1) through sixty-eight (68).

2. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

3. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

4. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of their family.

5. Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

6. Defendant's actions have directly and proximately resulted in Plaintiffs' prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT III
### (Invasion of Privacy – Intrusion Upon Seclusion)

7. Plaintiffs incorporates Paragraphs one (1) through sixty-eight (68).

8. Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiffs' privacy.

9. All of the texts made to Plaintiffs' cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiffs' right to privacy.

10. Defendant's persistent autodialed texts to their cellular phones eliminated Plaintiffs' right to be left alone.

11. Defendant's autodialed texts disrupted Plaintiffs' privacy, disrupted Plaintiffs' sleep, disrupted Plaintiffs during mealtimes, disrupted Plaintiffs during their work, and continually frustrated and annoyed Plaintiffs.

12. These persistent autodialed text messages eliminated the peace and solitude that the Plaintiffs would have otherwise had in Plaintiffs' home and anywhere else Plaintiffs went with thier cellular phones.

13. By texting thier cellular phones, Plaintiffs had no escape from these text messages either in their home or when they left the home.

14. By persistently autotexting Plaintiffs' cellular phone without prior express consent, Defendant invaded Plaintiffs' right to privacy, as legally protected by the TCPA, and caused Plaintiffs to suffer concrete and particularized harm.

15. Defendant's harassing collection conduct and tactic of repeatedly auto dialing Plaintiffs to thier cellular telephone after requests to stop is highly offensive to a reasonable person.

16. Defendant intentionally intruded upon Plaintiffs' solitude and seclusion.

17. As a result of Defendant's action or inaction, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

18. Plaintiffs incorporates Paragraph one (1) through sixty-eight (68).

19. The harassing and abusive conduct, including the repetitive robotexts to Plaintiffs, has caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

20. It is beyond the pale of decency to robotext anybody 1000 times.

21. The damage to the Plaintiffs was and is immense. The Plaintiffs had a stunned sense of helplessness because they could not stop the calls despite explaining over and over that the account concerning the text messages was closed and they wanted the harassing robotexts to end.

22. To text somebody this amount of time is inhumane.

23. It is utterly uncivilized to robotext someone 1000 times.

24. If a person texted another person 1000 times, the caller would most likely be in prison for criminal harassment.

25.     This is especially true if the sender continued to make the texts after being told to stop and never had permission to text in the first place.

26.     The texts to Plaintiffs by Defendant are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiffs respectfully requests that judgment be entered against Defendant for punitive damages and such other and further relief as the Court shall deem just and proper.

                    Respectfully submitted,

                    <u>Heather H. Jones, Esq.</u>
                    Heather H. Jones, Esq.
                    Florida Bar No. 0118974
                    William "Billy" Peerce Howard, Esq.
                    Florida Bar No. 0103330
                    The Consumer Protection Firm, PLLC
                    4030 Henderson Boulevard
                    Tampa, FL 33629
                    Telephone: (813) 500-1500, ext. 205
                    Facsimile: (813) 435-2369
                    Heather@TheConsumerProtectionFirm.com
                    Billy@TheConsumerProtectionFirm.com
                    *Attorney for Plaintiffs*